## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JODI CAMPBELL | ) | |
| | ) | |
| | ) | Case No.  14-10021 (BLS) |
| Debtor. | ) | |
| _____ | ) | |
| JODI CAMPBELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 14-50082 |
| | ) | |
| ACCESS GROUP, INC. AND | ) | |
| ENTERPRISE RECOVERY SYSTEMS, | ) | Related to Adv. Docket |
| | ) | Nos. 18, 19, 21, & 22 |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## OPINION[1]

Before the Court is Defendant Access Group, Inc.'s Motion for Summary Judgment [Adv. Docket No. 18] against Debtor-Plaintiff Jodi Campbell, the Opening Brief in support thereof [Adv. Docket No. 19], the Answer to the Motion for Summary Judgment [Adv. Docket No. 21], and the Answering Brief in support thereof [Adv. Docket No. 22]. For the following reasons, the Court will grant the Motion for Summary Judgment, and judgment will be entered in favor of the Defendant, Access Group, Inc.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that this Court's authority is determined to be within the parameters of 28 U.S.C. § 157(c)(1), this Opinion and the accompanying Order shall be deemed to be the Court's proposed findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9033.

## I. BACKGROUND

### A. Factual Background

This dispute concerns the discharge of student loans. Plaintiff enrolled in a master's degree program in History at the University of Delaware from 2003 until 2005. In order to obtain a museum studies certificate, Plaintiff was required to complete a museum internship. Plaintiff obtained a museum internship in Edinburgh, Scotland. To finance this internship, Plaintiff applied for and received a loan from the Defendant in the amount of $13,318.00 (the "Loan") on May 6, 2004.

Plaintiff made payments on the Loan from 2005 until 2007 by working at various jobs, such as a waitress, a tour guide, and working for ING Direct. In 2007, Plaintiff enrolled in the University of Guelph in Guelph, Ontario, Canada, which should have placed the Loan in deferment. However, due to an error by the University of Guelph failing to certify to Defendant that the Plaintiff was in school, the Loan instead went into repayment. Plaintiff attempted to contact Defendant, but the Loan had been turned over to a collection agency. Defendant told Plaintiff to contact the collection agency in order to make payment arrangements. Plaintiff did not make payment arrangements with the collection agency because she believed that the payment arrangements were not feasible, since she was not earning any income at that time as a student.

By May, 2012, Plaintiff finished her coursework and returned home to Delaware. She taught classes as an adjunct professor at Wesley College and worked as a waitress. During this time, Plaintiff applied for positions in history, her field of expertise. Plaintiff has not yet completed her Ph.D dissertation, but expects to complete it by the summer of 2015.

Plaintiff filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on January 7, 2014. Plaintiff initiated the instant adversary on March 11, 2014. The Complaint in this adversary proceeding seeks a declaration from this Court that the Loan is not an "educational loan" within the meaning of 11 U.S.C. § 523(a)(8) and therefore is dischargeable under 11 U.S.C. § 727. Alternatively, the Complaint seeks an Order discharging the Loan on the basis that repayment would impose an undue hardship on Plaintiff.

After the filing of the bankruptcy petition and this Complaint, Plaintiff obtained a year-long contract position teaching in Reno,

Nevada. Plaintiff is currently making $42,000 per year. Her monthly net income is $2,672.00 and her monthly expenses are $2,256.00. In addition to the Loan that is the subject of this proceding, Plaintiff also has approximately $160,000 in federal student loans. Based on her previous income-based repayment plan, Plaintiff is currently required to pay $0.00 per month. Using an income-based repayment calculator based on her new income, the record reflects that Plaintiff may be required to pay between $204.13 and $505.50 per month.

## B. Procedural Background

On January 7, 2014, Plaintiff filed a voluntary petition for relief under chapter 7 of the Code [D.I. 1]. Plaintiff initiated the instant adversary proceeding by filing her Complaint Seeking Discharge of Student Loan on March 11, 2014 [Adv. Docket No. 1]. Access Group, the Defendant, filed its Answer to the Complaint on April 9, 2014 [Adv. Docket No. 6]. Discovery concluded on September 30, 2014. Defendant filed its Motion for Summary Judgment on November 17, 2014 [Adv. Docket No. 18 & 19]. Plaintiff filed her Response and Answering Brief on December 15, 2014 [Adv. Docket No. 21 & 22]. Briefing is complete and the issue is ripe for determination.

## II. JURISDICTION & VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and (O).

## III. DISCUSSION

## A. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The Supreme Court has explained that an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] The Supreme Court further explained that materiality is determined by the substantive law, and "[o]nly disputes

---

[2] Fed.R.Civ.P. 56(a).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[4]

The movant bears the burden of establishing the absence of a genuine dispute as to a material fact.[5] After the movant has made the requisite showing, the burden shifts to the non-movant to establish that summary judgment is not warranted.[6] In deciding a motion for summary judgment, the court must view all facts in the light most favorable to the non-movant to determine whether the movant is nonetheless entitled to judgment as a matter of law.[7] Moreover, the court must draw all inferences in favor of the non-movant and "where the non-moving party's evidence contradicts the movant's ... the non-movant's must be taken as true."[8]

## B. Legal Standard for Discharge of Student Loans

Two separate tests have been articulated by Circuit courts to construe "undue hardship" in the context of discharge of a student loan. The first test articulated by the Second Circuit is known as the *Brunner* test.[9] In contrast to the *Brunner* test, the First,[10] Eighth,[11] and Tenth[12] Circuits have adopted a "totality of the circumstances test."

---

[4] *Id.*

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (citing Fed.R.Civ.P. 56).

[6] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 n. 2.

[8] *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir.1994) (internal quotation marks omitted) (citation omitted). *See also Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976) ("Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.").

[9] *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987).

[10] *In re Lorenz*, 337 B.R. 423, 430 (B.A.P. 1st Cir. 2006).

[11] *In re Andrews*, 661 F.2d 702, (8th Cir. 1981).

[12] *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302 (10th Cir. 2004).

Under either test the debtor has the burden of demonstrating undue hardship.[13]  The Third Circuit has adopted the *Brunner* test.[14]

The *Brunner* test is a three-part inquiry where the debtor must prove an "undue hardship" by showing "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans."[15]

The first prong of the test "requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary."[16]  The second prong of the test "properly recognizes the potential continuing benefit of an education, and imputes to the meaning of 'undue hardship' a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period."[17]  The third prong of the test is a good faith inquiry, and should only be reached if the debtor has satisfied the first two parts of the test.[18]  "The good faith inquiry is to be guided by the understanding that 'undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'"[19]

## C. The Parties' Positions

Defendant argues Plaintiff has acquired advanced degrees in her field of study which qualify her for quality employment.  Plaintiff currently makes $42,000 per year and has good employment prospects because she is open to taking diverse positions.  Taken as a whole, Defendant believes Plaintiff's career prospects are bright, her expenses low, she has only herself to support, and repayment of the loan will not cause her standard of living to fall below that minimally necessary.

---

[13] *In re Faish*, 72 F.3d 298, 301 (3d Cir. 1995); *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir.), *cert. denied*, 516 U.S. 828, (1995); *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993).

[14] *In re Faish*, 72 F.3d at 303.

[15] *Id.* at 304-305 *(citing Brunner*, 831 F.2d at 396).

[16] *Id.* at 305 *(quoting Roberson*, 999 F.2d at 1135).

[17] *Id.* *(quoting Roberson*, 999 F.2d at 1135).

[18] *Id.*

[19] *Id.* *(quoting Roberson*, 999 F.2d at 1135).

Defendant also argues that Plaintiff does not have any physical or psychological disabilities that materially affect her ability to maintain employment. Finally, Defendant argues that Plaintiff has not shown that she has made a good faith effort to repay the Defendant's loan. In support, Defendant notes that Plaintiff only made a halfhearted attempt to arrange a repayment plan and, when instructed to follow up with the collection agency, Plaintiff failed to do so.

Plaintiff argues that prior to obtaining her present teaching position, she was not able to maintain a minimal standard of living. Plaintiff notes that her job history indicates that she has been unable to obtain a position with an income sufficient to pay her debt with the Defendant. Additionally, Plaintiff argues that obtaining her Ph.D will not improve her job prospects or income. Plaintiff believes that while there is a possibility of earning a higher income in the future, there is no evidence presented to support that possibility. Plaintiff also believes that she has shown that her financial difficulty has persisted since 2005. Plaintiff states that even with an advanced degree, her work history has shown that she has been unable to obtain full time work in any field since obtaining her master's degree. Plaintiff notes that her income has never been sufficient to support herself without the help of her family. Further, Plaintiff believes that there is no indication that she has any reason to be optimistic about her future career prospects. Finally, Plaintiff argues that she made payments on her loans between 2005 and 2007, when she had more than a minimal income. Plaintiff states that she attempted to make payment arrangements with the collection agency, but the payments demanded were not feasible for her to pay based on her income, which at that time was zero because she was still in school.

## D. The Loan is not Dischargeable

### 1. Plaintiff Can Maintain a Minimal Standard of Living

As stated above, the first prong of the test "requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary."[20] Here, Plaintiff has only herself to support and has acquired advanced degrees in her field of study, which may qualify her for quality employment. As stated above, Plaintiff currently makes $42,000 per year.

---

[20] *In re Faish*, 72 F.3d at 305 (*quoting Roberson*, 999 F.2d at 1135).

The Court finds that that there is no genuine dispute of material fact that the Plaintiff cannot show that she cannot maintain a "minimal" standard of living for herself if forced to repay the loans.  The first prong of the *Brunner* test requires the Court to look at the Plaintiff's *current* financial situation.  Plaintiff's recent financial situation, coupled with her reduced obligations under the income-based repayment program, requires a finding for Defendant on this first element of the *Brunner* test.

### 2. The Undue Hardship Will Not Persist for a Significant Portion of the Repayment Period

The second prong of the *Brunner* test requires "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans."[21] On the record before the Court, the Plaintiff cannot show that additional circumstances exist indicating that Plaintiff's financial distress is likely to persist for a significant portion of the repayment period for student loans.  The Court does not accept the proposition that obtaining a Ph.D will not improve the Plaintiff's job prospects.  If the Plaintiff finishes her Ph.D, she will be in a better position to obtain permanent employment as compared her competition for the same jobs.  Plaintiff's current employment, her master's degree, and imminent potential to obtain her Ph.d indicate that Plaintiff's state of affairs may improve after she obtains her Ph.D.  Thus, summary judgment is proper on this prong.

### 3. Good Faith

Because Plaintiff cannot satisfy the first two prongs of the *Brunner* test, the Court need not reach the question of good faith.

---

[21] *Id.* (quoting *Brunner*, 831 F.2d at 396).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that there is no genuine dispute as to any material fact, and the Defendant is entitled to judgment as a matter of law.   Accordingly, Defendant's Motion for Summary Judgment will be granted. An appropriate order follows.

**BY THE COURT**:

Dated: June 24, 2015
Wilmington, Delaware

Brendan Linehan Shannon
Chief United States Bankruptcy Judge